[Cite as *State v. Samples*, 2013-Ohio-986.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | | C.A. No. 12CA0051-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CLINT SAMPLES | | WADSWORTH MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 11TRC04895-A,B,C |

DECISION AND JOURNAL ENTRY

Dated: March 18, 2013

MOORE, Presiding Judge.

{¶1} Defendant-Appellant, Clint Samples, appeals from the February 17, 2012 judgment of the Wadsworth Municipal Court. This Court affirms, in part, and reverses, in part.

I.

{¶2} This matter stems from a one-car accident that occurred on Eastern Road in Medina, County. After driving his car into a guardrail, Mr. Samples was charged with driving while under the influence of alcohol or a drug of abuse in violation of R.C. 4511.19(A)(1)(a), failure to control in violation of R.C. 4511.202, and refusing a chemical test in violation of R.C. 4511.19(A)(2). Following a bench trial, Mr. Samples was found guilty of all charges. The trial court sentenced Mr. Samples to sixty days in jail, suspended his driver's license for one year, and imposed a $475 fine for driving while under the influence of a drug of abuse. Further, the trial court sentenced Mr. Samples to twenty days in jail for refusing a chemical test, and at sentencing dismissed the charge of failure to control. All jail time was ordered to run concurrently.

{¶3}  Mr. Samples filed a timely appeal, raising one assignment of error for our consideration.  The above sentence was stayed pending appeal.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE WHERE THE TESTIMONY WAS CONTRADICTED AND NO SUBSTANTIVE EVIDENCE OF IMPAIRMENT WAS AVAILABLE.

{¶4}  In his sole assignment of error, Mr. Samples contends that the court's verdict was against the manifest weight of the evidence and that the State produced no substantive evidence of his impairment.  He argues in his merit brief that the testimony of Danielle Fry, a witness for the State, contradicted his testimony regarding the events that unfolded on the evening of the accident, and that there was not "substantial evidence" in the record upon which a trier of fact could reasonably conclude that all of the elements of driving while under the influence of a drug of abuse had been proven beyond a reasonable doubt.

{¶5}  Although Mr. Samples labels his argument as a challenge to the weight of the evidence, he also challenges the sufficiency of the evidence in stating that there was no substantive evidence of impairment.  "Inasmuch as a court cannot weigh the evidence unless there is evidence to weigh," this Court will first consider Mr. Samples' sufficiency argument, as it renders his weight of the evidence argument moot.  *Whitaker v. M.T. Automotive, Inc.*, 9th Dist. No. 21836, 2007-Ohio-7057, ¶ 13.

{¶6}  In a sufficiency challenge:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Galloway*, 9th Dist. No. 19752, 2001 WL 81257 (Jan. 31, 2001), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Further, the test for sufficiency requires a determination of whether the State has met its burden of production at trial. *State v. Walker*, 9th Dist. No. 20559, 2001 WL 1581570, *2 (Dec. 12, 2001); *see also State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring).

{¶7} R.C. 4511.19(A)(1)(a) sets forth the elements of driving while under the influence of alcohol or a drug of abuse as follows: "[n]o person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." Further, R.C. 3719.011(A) defines "drug of abuse," as "any controlled substance as defined in section 3719.01 of the Revised Code, any harmful intoxicant as defined in section 2925.01 of the Revised Code, and any dangerous drug as defined in section 4729.01 of the Revised Code."

{¶8} R.C. 3719.01(C) defines "controlled substance" as "a drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V."

{¶9} R.C. 2925.01(I)'s definition of "harmful intoxicant" does not include beer or intoxicating liquor, but means any of the following:

> (1) Any compound, mixture, preparation, or substance the gas, fumes, or vapor of which when inhaled can induce intoxication, excitement, giddiness, irrational behavior, depression, stupefaction, paralysis, unconsciousness, asphyxiation, or other harmful physiological effects, and includes, but is not limited to, any of the following:

> (a) Any volatile organic solvent, plastic cement, model cement, fingernail polish remover, lacquer thinner, cleaning fluid, gasoline, or other preparation containing a volatile organic solvent;

> (b) Any aerosol propellant;

(c) Any fluorocarbon refrigerant;

(d) Any anesthetic gas.

(2) Gamma Butyrolactone;

(3) 1,4 Butanediol.

{¶10}     R.C. 4729.01(F), defines "dangerous drug" as:

(1) Any drug to which either of the following applies:

(a) Under the "Federal Food, Drug, and Cosmetic Act," 52 Stat. 1040 (1938), 21 U.S.C.A. 301, as amended, the drug is required to bear a label containing the legend "Caution: Federal law prohibits dispensing without prescription" or "Caution: Federal law restricts this drug to use by or on the order of a licensed veterinarian" or any similar restrictive statement, or the drug may be dispensed only upon a prescription;

(b) Under Chapter 3715. or 3719. of the Revised Code, the drug may be dispensed only upon a prescription.

(2) Any drug that contains a schedule V controlled substance and that is exempt from Chapter 3719 of the Revised Code or to which that chapter does not apply.

(3) Any drug intended for administration by injection into the human body other than through a natural orifice of the human body.

In addition, "[a]n alternate definition of the term can be found in R.C. 4506.01(L), which defines 'drug of abuse' as 'any controlled substance, dangerous drug as defined in section 4729.01 of the Revised Code, or over-the-counter medication that, when taken in quantities exceeding the recommended dosage, can result in impairment of judgment or reflexes.'" *State v. Collins*, 9th Dist. No. 11CA0027, 2012-Ohio-2236, ¶ 9, quoting R.C. 4506.01(L).

{¶11} We look to our recent decision in *State v. Collins* for guidance with the present matter.  In *Collins*, we concluded that the State failed to present sufficient evidence that Mr. Collins operated his vehicle while under the influence of a drug of abuse.  In reversing the trial court's decision, we reasoned:

> While the officers testified at length regarding [Mr.] Collins' impaired condition and gave their respective opinions that, based on their observations, he was under the influence of some sort of illegal narcotic or drug, the State did not establish that [Mr.] Collins' impaired condition resulted from being under the influence of a drug of abuse. There was no evidence presented which demonstrated that [Mr.] Collins' condition resulted from being under the influence of a controlled substance, a harmful intoxicant, or a dangerous drug as outlined in R.C. 3719.011(A). Nor was there evidence presented which showed that [Mr.] Collins' condition resulted from ingesting a controlled substance, dangerous drug, or over-the-counter medication taken in [a quantity] exceeding the recommended dosage as contemplated by R.C. 4506.01(L). Thus, as the State did not establish a nexus between [Mr.] Collins' impaired condition and any type of drug of abuse, [Mr.] Collins' conviction must be reversed.

(Internal quotations omitted.) *Collins* at ¶ 20.

{¶12} Here, the State presented the testimony of three witnesses: Danielle Fry, Trooper Daniel Jones, and Trooper Brian J. Beal. Ms. Fry testified that she and Mr. Samples met at an N.A. meeting on the evening of the accident. After the meeting, Ms. Fry and Mr. Samples went to Dairy Queen with other members of the group, and then Mr. Samples offered to drive her home. On their way, Mr. Samples stopped for gas at the Circle K. Ms. Fry testified that "[h]e seemed fine" prior to stopping at the gas station, but "once we [] went from the gas station and into the car, it was like an empty soul sitting next to me." Further, Ms. Fry testified as follows:

> Q: You described a particular type of appearance and behavior of [] [Mr. Samples]. Were you suggesting that he was drunk or are you suggesting that he was impaired by drugs?
>
> A. Either/or.

{¶13} Trooper Jones observed Mr. Samples at the scene of the accident. Trooper Jones testified:

> * * *
>
> Q. During the period that you were present at the scene, did you have occasion to make contact with [] [Mr. Samples]?
>
> A. Yes, sir.

Q. And under what circumstances?

A. I was outside the squad and I asked him to come back to the patrol car and have a seat.

* * *

Q. Did you have a sufficient opportunity to observe him to form an opinion with regard to his condition as it relates to his ability to operate a vehicle?

A. Yes, sir.

Q. And from what observations did you formulate your opinion?

A. Well, he was in the rear seat of my patrol car, I asked him to fill out a, if he would be able to fill out a statement. And while he was in the back I had asked him, you know, take a look at his eyes and I shined my flashlight in them and, you know, the pupils were very constricted.

* * *

Q. And what is the significance that that had for you?

A. That [] Mr. Samples could have, you know, was *more than likely* on some drug impairment.

* * *

(Emphasis added.)

{¶14} Trooper Beal also testified as follows:

* * *

Q. What ultimate conclusion did you reach about [] [Mr. Samples'] condition?

A. I believe that [] [Mr. Samples] was impaired and therefore not capable to operate a motor vehicle and he was cited as such.

Q. What was it that you believed had impaired him?

A. Drugs of abuse.

* * *

{¶15} Although Ms. Fry, Trooper Jones, and Trooper Beal all testified that Mr. Samples

was impaired by a drug of abuse, they did not testify as to what type of drug of abuse caused his

alleged impairment. Similar to *Collins*, there was no evidence presented which demonstrated that Mr. Samples' alleged impairment resulted from being under the influence of a controlled substance, a harmful intoxicant, or a dangerous drug as outlined in R.C. 3719.011(A). Nor was any evidence presented which showed that Mr. Samples' alleged impairment resulted from ingesting a controlled substance, dangerous drug, or over-the-counter medication taken in a quantity exceeding the recommended dosage as contemplated by R.C. 4506.01(L).

{¶16} Even in viewing the evidence in a light most favorable to the prosecution, we conclude that the State did not meet its burden of proving each element of driving under the influence of a drug of abuse beyond a reasonable doubt.

{¶17} Mr. Samples' sole assignment of error is sustained.

### III.

{¶18} Having sustained Mr. Samples' sole assignment of error, the judgment of the Wadsworth Municipal Court is reversed only as to Mr. Samples' conviction for driving under the influence of a drug of abuse and remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

                                                    _____

                                                    CARLA MOORE
                                                    FOR THE COURT

BELFANCE, J.
CARR, J.
CONCUR.

APPEARANCES:

PATRICIA J. SMITH, Attorney at Law, for Appellant.

PAGE C. SCHROCK, Assistant Director of Law, for Appellee.