[Cite as *State v. Collins*, 2012-Ohio-2236.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 11CA0027 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TERRY J. COLLINS, JR. | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. TRC-11-02-00917 |

DECISION AND JOURNAL ENTRY

Dated: May 21, 2012

CARR, Judge.

{¶1}   Appellant, Terry J. Collins, Jr., appeals the judgment of the Wayne County Municipal Court.  This Court reverses.

I.

{¶2}   This matter arises out of an incident which occurred on the evening of February 7, 2011.  After driving his minivan off Oakley Road in Wooster, Ohio, Collins was charged with driving while under the influence of alcohol or a drug of abuse in violation of R.C. 4511.19(A)(1)(a), and failure to control in violation of Section 331.34 of the Wooster Codified Ordnances.  A bench trial followed and Collins was found guilty of both charges.  For the offense of driving while under the influence of a drug of abuse, the trial court sentenced Collins to three days in jail, suspended his driver's license for eighteen months, and imposed a fine of $750.  For the offense of failure to control, the trial court imposed a fine $150.  The trial court's sentencing entry was journalized on May 2, 2011.

{¶3}   Collins filed a notice of appeal on May 27, 2011.   On appeal, he raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

DEFENDANT-APPELLANT'S CONVICTION FOR DRIVING WHILE UNDER THE INFLUENCE OF A DRUG OF ABUSE WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶4}   In his first assignment of error, Collins argues that his conviction for driving while under the influence of a drug of abuse was not supported by sufficient evidence.  This Court agrees.

{¶5}   In support of his assignment of error, Collins argues that the State never demonstrated that he had ingested a drug of abuse, let alone that he was under the influence of a drug of abuse at the time his minivan slid off Oakley Road.   Collins further calls attention to the fact that the State never presented evidence to identify the particular drug of abuse that was allegedly at issue in this case.  Collins emphasizes that he denied being under the influence of a drug of abuse on the night in question, and that there were no drugs found in his van or on his person.  Collins further notes that the State failed to produce the results of his blood test, or any expert testimony, to establish that he was under the influence of a drug of abuse.

{¶6}   In response, the State argues that statute neither requires the State to prove the specific drug which caused the defendant's impairment, nor does it require that the drug of abuse be present in a specific concentration.  The State further argues that, "[w]hile it is true that there is no certainty as to what substance was influencing Mr. Collins, there is an abundance of circumstantial evidence that Mr. Collins was under the influence of some drug of abuse, or combination of drug of abuse with alcohol, to the extent that his actions were extremely impaired

on the night of the accident." The State emphasizes that both officers who testified at trial stated that it was their opinion that, based on their experience, Collins was under the influence of a drug of abuse. The State relies on *State v. Strebler*, 9th Dist. No. 23003, 2006-Ohio-5711, for the proposition that it may rely upon physiological factors and the testimony of lay witnesses to demonstrate a person's impaired driving ability. The State also points to this Court's decision in *State v. Zentner*, 9th Dist. No 02CA0040, 2003-Ohio-2352, ¶ 19, for the proposition that "virtually any lay witness" may testify as to whether an individual is intoxicated.

{¶7} The law pertaining to a challenge to the sufficiency of the evidence is well settled:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

*State v. Galloway*, 9th Dist. No. 19752, 2001 WL 81257 (Jan. 31, 2001), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶8} The test for sufficiency requires a determination of whether the State has met its burden of production at trial. *State v. Walker*, 9th Dist. No. 20559, 2001 WL 1581570 (Dec. 12, 2001); *see also State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997).

{¶9} The elements of driving while under the influence of alcohol or a drug of abuse are set forth in R.C. 4511.19(A)(1)(a), which states, "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." R.C. 3719.011(A) defines "drug of abuse," as "any controlled substance as defined in section 3719.01 of the Revised Code, any harmful intoxicant as defined in section 2925.01 of the Revised Code, and

any dangerous drug as defined in section 4729.01 of the Revised Code." An alternate definition of the term can be found in R.C. 4506.01(L), which defines "drug of abuse" as "any controlled substance, dangerous drug as defined in section 4729.01 of the Revised Code, or over-the-counter medication that, when taken in quantities exceeding the recommended dosage, can result in impairment of judgment or reflexes." In a recent case where this Court examined whether a defendant's conviction under R.C. 4511.19(A)(1)(a) was against the manifest weight of the evidence, this Court relied on the definition of "drug of abuse" set forth in R.C. 3719.011(A). *State v. Peters*, 9th Dist. No. 08CA0009, 2008-Ohio-6940, ¶ 4-11.

{¶10} R.C. 3719.01(C) defines "controlled substance" as "a drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V."

{¶11} Pursuant to R.C. 2925.01(I), "harmful intoxicant" does not include beer or intoxicating liquor but means any of the following:

(1) Any compound, mixture, preparation, or substance the gas, fumes, or vapor of which when inhaled can induce intoxication, excitement, giddiness, irrational behavior, depression, stupefaction, paralysis, unconsciousness, asphyxiation, or other harmful physiological effects, and includes, but is not limited to, any of the following:

(a) Any volatile organic solvent, plastic cement, model cement, fingernail polish remover, lacquer thinner, cleaning fluid, gasoline, or other preparation containing a volatile organic solvent;

(b) Any aerosol propellant;

(c) Any fluorocarbon refrigerant;

(d) Any anesthetic gas.

(2) Gamma Butyrolactone;

(3) 1,4 Butanediol.

Pursuant to R.C. 4729.01(F), "dangerous drug" means:

(1) Any drug to which either of the following applies:

(a) Under the "Federal Food, Drug, and Cosmetic Act," 52 Stat. 1040 (1938), 21 U.S.C.A. 301, as amended, the drug is required to bear a label containing the legend "Caution: Federal law prohibits dispensing without prescription" or "Caution: Federal law restricts this drug to use by or on the order of a licensed veterinarian" or any similar restrictive statement, or the drug may be dispensed only upon a prescription;

(b) Under Chapter 3715. or 3719. of the Revised Code, the drug may be dispensed only upon a prescription.

(2) Any drug that contains a schedule V controlled substance and that is exempt from Chapter 3719 of the Revised Code or to which that chapter does not apply.

(3) Any drug intended for administration by injection into the human body other than through a natural orifice of the human body.

{¶12} The State called two witnesses at trial. The first witness, Officer Kenneth R. Saal, testified as follows. Officer Saal was on patrol on the night of February 7, 2011, when dispatch informed him that there was a subject possibly driving while intoxicated on Oakley Road in Wooster. When Officer Saal responded to the scene, he noticed that a van had slid off the side of the roadway. The van was facing north and sat perpendicular to Oakley Road, which runs east and west. Officer Saal described the roads, which were covered in snow, as "a little slippery." When Officer Saal approached the vehicle, he noticed the driver, Collins, had the hood of the vehicle up and he was "messing with the engine." Collins indicated that he was on his way to an apartment complex in Wooster. Officer Saal observed that Collins' speech was "extremely slurred and slow" in responding to questions. When Officer Saal asked for his identification, Collins walked toward the driver side of the vehicle. Officer Saal observed that Collins was "unsteady on his feet." Collins did not respond when Officer Saal inquired as to whether he had been drinking that evening. Officer Saal testified, "I did not smell any alcohol so I knew he had to be under the influence of something, it appeared he was under the influence of something."

{¶13} Officer Saal testified that this was not his first encounter with Collins. Two or three weeks prior to the incident in question, Collins was a passenger in a vehicle that Officer Saal had stopped. On that occasion, Officer Saal had a ten to fifteen minute conversation with Collins and he had "no trouble at all" understanding what Collins was saying. Given that he had spoken with Collins on a prior occasion, Officer Saal testified that, on the night in question, he "knew that was something wrong with [Collins]" because his speech was so "slow." After Officer Saal asked Collins if he had been drinking, Officer Saal asked Collins if he had ingested any illegal drugs. Collins responded in the negative. Officer Saal then conducted a horizontal gaze nystagmus test, and observed that Collins' pupils were "extremely small." Officer Saal testified that Collins' performance on the test and the size of his pupils were indicators that there was some type of narcotic in his system.

{¶14} Officer Saal called Officer McConnell to the scene because he was interested in Officer McConnell's opinion as to whether Collins might be under the influence of drugs. Officer Saal was interested in Officer McConnell's opinion because he "deals with people in narcotics all the time." After conferring with Officer McConnell, Officer Saal placed Collins under arrest. Officer Saal then took Collins to the hospital for a blood draw. Prior to the administration of the blood draw, Officer Saal performed the walk and turn test, as well as the one leg stand test, on Collins. Officer Saal testified that he waited to administer the tests until he arrived at the hospital because the temperature and road conditions at the scene of the accident made administering the tests problematic. Collins was unable to pass either of the tests. Collins then cooperated with the laboratory technician for the blood draw. After Collins' blood was drawn, it was secured in a refrigerator where it was stored until it was sent through certified mail to the lab for testing. Officer Saal testified that he did not have the results of the test because the

blood sample was lost in the mail. Officer Saal received documentation from the post office confirming that the sample had been lost. Officer Saal further testified that he had previously dealt with individuals whom he suspected were under the influence of drugs of abuse, and those individuals subsequently tested positive. Officer Saal further testified that he had never had that suspicion but later found out that the individual was not under the influence of drugs. Officer Saal testified that in this case, he was of the opinion that Collins was under the influence of "some type of narcotic."

{¶15} The second witness to testify on behalf of the State was Officer Quinn McConnell. On the night of February 7, 2011, Officer McConnell was on patrol when he received a call regarding a possibly impaired driver on Oakley Road. Officer McConnell was the first officer to respond to the scene. As Officer McConnell was not in uniform and was traveling in an unmarked cruiser that evening, he merely observed the situation. Officer McConnell noticed Collins briefly exit his vehicle to examine its front end. When other officers arrived on the scene, Officer McConnell departed and continued his patrol duties. Officer McConnell was subsequently called back to the scene to assist Officer Saal.

{¶16} After speaking with Officer Saal, Officer McConnell approached the vehicle where Collins was seated in the driver's seat. When Officer McConnell initially tapped on the window, Collins just stared straight ahead and was non-responsive. When Officer McConnell was able to get Collins' attention, he asked Collins to open the door. Officer McConnell noticed that Collins' pupils were "absolutely tiny." Officer McConnell testified that, based on his experience, the fact that Collins' pupils were the size of the "tip of a pen" suggested that he was "under the influence of some sort of narcotic." Officer McConnell further testified that he did not smell the odor of alcohol on Collins' person or in his vehicle. While Officer McConnell did

not smell the odor of alcohol, he testified that clearly Collins "was under the influence of something."

{¶17} Officer McConnell proceeded to have a conversation with Collins. Officer McConnell testified that Collins' speech was "[v]ery slow and deliberate" and "almost slurred." Officer McConnell testified that he had spoken with Collins during a traffic stop several weeks earlier and he did not recall his speech being so "poor." Officer McConnell testified that based on his prior experience, Collins' speech was an indicator that he was under the influence of drugs or alcohol. When Collins exited the vehicle, his movements were "slow and very deliberate." Officer McConnell did not recall Collins having any issues with his movements during their prior encounter. Officer McConnell inquired as to whether Collins had any drugs in his system. Collins denied taking any drugs. Collins indicated that he was on his way to see a friend named "Jay" who lived down the street. Officer McConnell testified that in the Brookside Apartments, which were right down the street from the scene of the accident, there was an individual named "Jay" from Akron who was a "convicted drug trafficker." Officer McConnell testified that Jay was known to deal drugs from the Brookside Apartments.

{¶18} Officer McConnell testified that he did not accompany Officer Saal to Wooster Community Hospital where the blood draw took place. After he relayed his observations to Officer Saal, Officer McConnell left the scene. Officer McConnell testified that, based on his observations, Collins was under the influence of "some sort of drug."

{¶19} In this case, the State failed to present sufficient evidence that Collins operated his vehicle while under the influence of a drug of abuse. While R.C. 4511.19(A)(1)(a) does not require the State to prove specific blood concentration levels, it does require the State to do more than prove impairment in a vacuum. R.C. 4511.19(A)(1)(a) specifically requires that the State

demonstrate that the source of the defendant's impairment was "alcohol, a drug of abuse, or a combination of them." As neither officer who testified on behalf of the State detected that Collins was under the influence of alcohol, it was necessary for the State to demonstrate that Collins was under the influence of a "drug of abuse" as defined by the Revised Code. While the State relies on this Court's decisions in *Strebler* in support of its position that the observations of officers were adequate to establish that Collins was under the influence of a drug of abuse, we find the facts of this case distinguishable from the circumstances at issues in *Strebler*. First, and perhaps most significantly, the defendant in *Strebler* admitted to the arresting officer that he was using Methadone, a Schedule II controlled substance. *Strebler* at ¶ 12. In addition to making this admission, the defendant produced a prescription bottle from his pocket, and directed the arresting officer to a second prescription bottle in his car. *Id*. In this case, however, Collins consistently denied being under the influence of a drug of abuse and there was no evidence that prescription bottles, or any other type of drug paraphernalia, was discovered on Collins' person or in his vehicle. Thus, while this Court was able to conclude in *Strebler* that it was "undisputed" that the defendant was under the influence of Methadone, the officers' testimony in this case did not establish that Collins was under the influence of a drug of abuse. *Id*. at ¶ 16. The instant matter is further distinguishable in that the State in *Strebler* was also able to produce the testimony of a chemist who indicated that the defendant's blood had tested positive for Methadone. *Id*. at ¶ 14. The State in this case, through no fault of its own, was unable to introduce the results of the blood draw due to the fact that the sample was lost in the mail.

{¶20} While the officers testified at length regarding Collins' impaired condition and gave their respective opinions that, based on their observations, he was under the influence of some sort of illegal narcotic or drug, the State did not establish that Collins' impaired condition

resulted from being under the influence of a drug of abuse. There was no evidence presented which demonstrated that Collins' condition resulted from being under the influence of a controlled substance, a harmful intoxicant, or a dangerous drug as outlined in R.C. 3719.011(A). Nor was there evidence presented which showed that Collins' condition resulted from ingesting a controlled substance, dangerous drug, or over-the-counter medication taken "in [a quantity] exceeding the recommended dosage" as contemplated by R.C. 4506.01(L). Thus, as the State did not establish a nexus between Collins' impaired condition and any type of drug of abuse, Collins' conviction must be reversed. Collins' first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

DEFENDANT-APPELLANT'S CONVICTION FOR DRIVING WHILE UNDER THE INFLUENCE OF A DRUG OF ABUSE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} In his second assignment of error, Collins argues that his conviction for driving under the influence was against the manifest weight of the evidence. Because our resolution of the first assignment of error is dispositive of this issue, this Court declines to address Collins' second assignment of error as it is rendered moot. *See* App.R. 12(A)(1)(c).

### III.

{¶22} Collins' first assignment of error is sustained. This Court declines to address Collins' second assignment of error as it is moot. The judgment of the Wayne County Municipal Court is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

WHITMORE, P.J.
MOORE, J.
CONCUR.


APPEARANCES:

BRIAN L. SUMMER, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and LATECIA E. WILES, Assistant Prosecuting Attorney, for Appellee.