[Cite as *State v. Peterson*, 2025-Ohio-877.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 2024CA0050-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| THOMAS PETERSEN | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 23TRC02138 |

DECISION AND JOURNAL ENTRY

Dated: March 17, 2025

STEVENSON, Judge.

**{¶1}** Defendant-Appellant Thomas Petersen appeals the judgment of the Medina Municipal Court that found him guilty of operating a vehicle under the influence of drugs ("OVI"), alleging that his conviction was against the sufficiency and manifest weight of the evidence. This Court affirms.

I.

**{¶2}** Mr. Petersen was charged with one count of OVI under R.C. 4511.19(A)(1)(a), a first degree misdemeanor, and one count of driving outside of marked lanes under R.C. 4511.33, a minor misdemeanor. The matter proceeded to a jury trial on the OVI charge. The State presented the testimony of an eyewitness, an Ohio State Highway Patrol Trooper, and an emergency medical technician/ paramedic ("EMT") as well as body camera footage from the Trooper. After the State rested, Mr. Petersen, through counsel, orally moved for an acquittal pursuant to Crim.R. 29(A). The court denied the motion. Mr. Petersen did not present any evidence. The jury found Mr.

Petersen guilty of the OVI charge. The marked lanes violation was tried separately to the bench and Mr. Petersen was found guilty by the court. He was sentenced to a $650 fine; 10 days in jail with three days mandatory, but no jail time provided he complete a three-day driver intervention program; and a one-year driver's license suspension.

{¶3} Mr. Petersen appeals and asserts two assignments of error for our review. Mr. Petersen's appeal is limited to his conviction for OVI. He does not challenge his conviction for the marked lanes violation.

II.

### ASSIGNMENT OF ERROR I

**THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY'S VERDICT OF GUILTY AS TO OPERATING A VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL AND/OR DRUGS OF ABUSE.**

{¶4} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function . . . is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶5} R.C. 4511.19(A)(1)(a) prohibits operating a vehicle under the influence and provides that "[n]o person shall operate any vehicle . . . if [.] . . . [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." The State and Mr. Petersen stipulated at trial that Mr. Petersen was operating his vehicle at the time of the incident giving rise to the OVI

charge. Mr. Petersen argues that his conviction is not supported by sufficient evidence because there was no evidence that he was "under the influence." Among other issues with the sufficiency of the evidence, Mr. Petersen seems to challenge whether the Trooper who responded to the scene was medically trained to offer an opinion on whether he was under the influence of drugs, specifically opioids, at the time of the accident.

{¶6} J.M. testified that on March 31, 2023, while she was driving on Route 71 in Medina County, Mr. Petersen hit her van with his vehicle, causing her to spin around two times before she came to a stop on the side of the road. Moments prior to the crash, J.M. saw Mr. Petersen drive from the "fast lane" across three lanes of travel before hitting her. J.M. got out of her van to go check on Mr. Petersen. She screamed "[a]re you okay?" but Mr. Petersen did not respond. He was not moving and was slumped over in his vehicle.

{¶7} Trooper Eric Eaton of the Ohio State Highway Patrol testified that when he responded to the scene of the accident, he saw J.M.'s van parked on the berm and Mr. Petersen's vehicle was in the ditch. He approached Mr. Petersen's vehicle and saw him reclined in the driver's seat, gripping the steering wheel with his left hand and holding his right hand up in the air. His eyes were open and he was chewing gum, but when Trooper Eaton attempted to speak with him a few times, he did not respond. Trooper Eaton observed that Mr. Petersen's pupils were constricted, which he testified was significant because it indicates "somebody being impaired by a drug." Trooper Eaton described Mr. Petersen's skin as "bluish, purplish, pale[,]" which he identified as a sign that Mr. Petersen was overdosing on drugs. By the time the ambulance arrived, Mr. Petersen was completely unresponsive. Trooper Eaton believed Mr. Petersen was in a drug overdose based upon his constricted pupils, skin tone, his locked position on the steering wheel, and his inability to move.

{¶8}    In describing his training and experience, Trooper Eaton testified that he had been a State Highway patrolman for eight years.  After his initial training at the Ohio State Highway Patrol Academy, which included OVI training, he went back to the Academy for special drug impairment training, called "ARIDE[.]"  In ARIDE, he learned about the different drugs of abuse, including opioids, and was generally trained to look for the effects of each one.  He stated that in the course of his career, he had encountered others under the influence of opioids, "[m]aybe five times[,]" mostly in incidents involving car crashes.

{¶9}    Trooper Eaton further testified that when the emergency medical technicians arrived on the scene, they placed Mr. Petersen on a gurney and transported him into an ambulance where they administered NARCAN. Mr. Petersen then became responsive.  Mr. Petersen told Trooper Eaton that he thought he had a seizure and denied any drug use.  Mr. Petersen said he last had a seizure when he was 15 years old.  Mr. Petersen was 45 years old at the time of the crash.  According to Trooper Eaton, Mr. Petersen did not seem concerned about his medical condition like one would expect from someone who just had a seizure.  Instead, Mr. Petersen kept asking about the location of his keys.

{¶10}    Trooper Eaton spoke with Mr. Petersen again at the hospital. When Trooper Eaton asked Mr. Petersen to provide a urine sample, Mr. Petersen asked if drugs would show up if he had used them a couple days ago.  Mr. Petersen refused all medical care and chemical tests.  Trooper Eaton testified without objection that it was his opinion that Mr. Petersen was under the influence of an opioid at the time of the accident.

{¶11}    Jake Koneval, the EMT who responded to the crash, also testified.  He stated that to become a firefighter paramedic he first took a six-month course at Cuyahoga Community College to become an EMT, then another year of coursework to become a paramedic, which is

advanced training that specializes in "drugs [and] cardiology[.]" During his education he learned about "narcotic analgesics or opiates[,]" "[t]oxicology. . . a little bit about how to treat overdoses . . ." and "the signs of an opioid or narcotic overdose[.]" Although it is rare, he said he has encountered those who are going through an opioid overdose.

{¶12} Mr. Koneval testified that the signs of an opioid or narcotic overdose are pinpoint pupils, decreased respiratory drive, unresponsiveness, and unconsciousness. He testified that the difference between a seizure and opioid overdose is that seizures would not cause pinpoint pupils or unresponsiveness and would not affect breathing. Mr. Koneval further testified that if he suspects an opioid overdose, he focuses on assisting breathing and administers naloxone, also known as NARCAN, which is an opiate antagonist that prevents the body from absorbing the opiate and forces withdrawal. According to Mr. Koneval, once the NARCAN is administered, the overdosing person immediately comes out of the overdose and breathing is restored. Mr. Koneval explained that if NARCAN is administered to someone who is not overdosing on an opioid, it does nothing whatsoever.

{¶13} Mr. Koneval stated that as he was preparing to treat Mr. Petersen with NARCAN, Mr. Petersen appeared blue, had pinpoint pupils, was not conscious, and did not react to his assistance. Mr. Petersen also had track marks on his arms that led Mr. Koneval to believe he had used intravenous drugs. Mr. Petersen instantly began to breathe on his own after the NARCAN was administered. Mr. Koneval testified without objection that he was of the opinion, based on his training and experience, that Mr. Petersen was overdosing on an opioid at the time of the accident based on his pinpoint pupils, track marks, unresponsiveness, and his reaction to NARCAN. He did not believe Mr. Petersen had a seizure.

{¶14} Trooper Eaton's body camera footage was played for the jury. It contained two videos of his interaction with Mr. Petersen at the scene, including when Mr. Petersen was sitting on a gurney in the ambulance, and a video of his conversation with Mr. Petersen at the hospital. The body camera footage corroborated the testimony of J.M., Trooper Eaton, and Mr. Koneval regarding Mr. Petersen's condition throughout the incident.

{¶15} Mr. Peterson argues that the evidence was insufficient because no conclusive evidence was presented that he was operating a vehicle under the influence of any substances. He points specifically to the fact that no drugs or drug paraphernalia were found in his vehicle; that Trooper Eaton did not have the medical training and education to render an opinion that Mr. Petersen was under the influence of drugs; and the fact that he did not take a breath or urine test so there was no chemical evidence of drug use. He also points to the fact that Trooper Eaton testified that a call was received from a third party stating that Mr. Petersen may have been having a seizure.

{¶16} In its instructions to the jury, the trial court defined "under the influence" nearly verbatim with the instruction that we previously affirmed as proper in *State v. Moine,* 72 Ohio App.3d 584, 586 (9th Dist. 1991), stating:

> "Under the influence" means that the Defendant consumed some alcohol and/or drugs of abuse, whether mild or potent, in such a quantity, whether small or great, that it adversely affected and noticeably impaired the Defendant's actions, reactions, or mental processes under the circumstances then existing, and deprived him of that clearness of intellect and control of himself which he would otherwise have possessed. The question is not how much alcohol and/or drugs of abuse would affect an ordinary person. The question is what effect did any alcohol and/or drugs of abuse consumed by the Defendant have on him at the time and place involved. If the consumption of alcohol and/or drugs of abuse so affected the nervous system, brain, or muscles of the defendant so as to impair, to a noticeable degree, his ability to operate the vehicle, then the Defendant was under the influence.

{¶17} We have also said that the standard for determining whether someone is "under the influence" is the same for both alcohol and a drug of abuse. *State v. Peters*, 2008-Ohio-6940, ¶ 6 (9th Dist.). "The defendant's ability to perceive, make judgments, coordinate movements, and safely operate a vehicle is at issue in the prosecution of a defendant under [R.C. 4511.19(A)(1)]." *Newark v. Lucas*, 40 Ohio St.3d 100, 104 (1988).

{¶18} "'To prove impaired driving ability, the state can rely on physiological factors. . . to demonstrate that a person's physical and mental ability to drive was impaired.'" *State v. Slone*, 2005-Ohio-3325, ¶ 9 (9th Dist.), quoting *State v. Holland*, 1999 WL 1313665, *5 (11th Dist. Dec. 17, 1999). The State is required to "do more than prove impairment in a vacuum." *State v. Collins*, 2012-Ohio-2236, ¶ 19 (9th Dist.). The State must "establish that [the defendant's] impaired condition resulted from being under the influence of a drug of abuse." *Id.* at ¶ 20.

{¶19} As to whether the evidence supports the finding that the defendant is under the influence, we previously established that:

> [V]irtually any lay witness, **without special qualifications**, may testify as to whether or not an individual is intoxicated. Under Evid.R. 701, a lay witness can give opinion testimony if the witness' opinion is rationally based on such witness' perception and it is helpful in providing a clear understanding of the testimony of the witness or a determination of a fact at issue. **Sobriety is "recognized by courts to be within the proper perception of a lay witness**. In order to be admissible, the state must establish the proper foundation by eliciting testimony from the witness to the effect that he or she has had previous experience observing intoxicated people.

(Internal quotations and citations omitted.) *State v. Zentner*, 2003-Ohio-2352, ¶ 19 (9th Dist.) In *Zentner*, we concluded that the evidence was sufficient to support a DUI conviction where a man who found the defendant's vehicle in the ditch and had experience with people who have consumed alcohol testified that defendant "reeked of alcohol" and was drunk. *Id.* at ¶ 11.

{¶20} We have applied this same principle when deciding other cases where the State relied on lay witness testimony, including that of a law enforcement officer, to support a conviction. *See e.g., Slone* at ¶ 12 (trooper noticed signs of impairment such as slurred speech, strong odor of alcohol, red glassy bloodshot eyes, flushed face); *Peters,* 2008-Ohio-6940, at ¶ 5 (9th Dist) (conviction for operating under the influence of a drug of abuse upheld where the trooper testified defendant exhibited several physiological factors that evidenced impairment and admitted taking the drug on the day she was stopped); *State v. McClain*, 2018-Ohio-538, ¶ 9 (9th Dist.) (conviction for operating under the influence of a drug of abuse upheld where trooper testified defendant had glassy eyes, dilated pupils, and exhibited unsteady behavior during field sobriety tests and admitted taking a drug of abuse); *State v. Strebler*, 2006-Ohio-5711, ¶ 12, 14 (9th Dist.) (conviction for operating a vehicle under the influence of drugs upheld where deputies noticed several physiological signs of impairment that did not have another explanation, including clues during field sobriety testing, and defendant admitted to using methadone).

{¶21} The State may also use evidence that a person refused to submit to a chemical test to determine alcohol consumption. *See Maumee v. Anistik*, 69 Ohio St.3d 339, 343 (1994). "'[I]t is reasonable to infer that a refusal to take such a test indicates the defendant's fear of the results of the test and his consciousness of guilt[.]'" *Id.* quoting *Westerville v. Cunningham*, 15 Ohio St. 2d 121, 122 (1968). The same general principle logically extends to a drug of abuse as well as alcohol since R.C. 4511.19(A)(1)(a) addresses both together.

{¶22} From the testimony and evidence outlined above, the State provided evidence, which if believed, would convince the jury that Mr. Petersen was under the influence of an opioid when he was operating his vehicle. Mr. Petersen lost control of his vehicle and collided with J.M. J.M. testified that Mr. Petersen was unresponsive when she yelled out to him. Both Trooper Eaton

and Mr. Koneval testified that Mr. Petersen had pinpoint pupils; his skin was bluish, purple, and pale; he had decreased respiration; and he was unresponsive and unconscious. Mr. Koneval testified that Mr. Petersen had track marks on his arms and immediately woke up and began to breathe on his own when he received NARCAN. Both Trooper Eaton and Mr. Koneval testified that in their training and experience, the aforementioned symptoms were signs of an opioid overdose and that Mr. Petersen was experiencing one at the time he operated his vehicle.

**{¶23}** Unlike *Collins,* 2012-Ohio-2236 (9th Dist.) and the cases that follow it to support a conclusion that the evidence was insufficient, the testimony in this case is sufficient to establish a nexus between Mr. Petersen's impairment-related symptoms and the use of a specific drug of abuse – opioids. In *Collins*, the defendant alleged that the State "never presented evidence to identify the particular drug of abuse that was allegedly at issue in [the] case." *Id.* at. ¶ 5. The State argued in response that the two officers who testified at trial stated that it was their opinion that, based on their experience, Mr. Collins was under the influence of a drug of abuse. The testimony of both officers was that the defendant was "under the influence of something," "some type of narcotic." *Id.* at ¶ 12, 13, 14, 16. The State acknowledged that "there is no certainty as to what substance was influencing Mr. Collins[.]" *Id.* at ¶ 6.

**{¶24}** We concluded in relevant part that:

> There was no evidence presented which demonstrated that Collins' condition resulted from being under the influence of a controlled substance, a harmful intoxicant, or a dangerous drug as outlined in R.C. 3719.011(A). . . . Thus, as the State did not establish a nexus between Collins' impaired condition and any type of drug of abuse, Collins' conviction must be reversed.

*Id.* at ¶ 20.

**{¶25}** Here, both Trooper Eaton and Mr. Koneval, the EMT, testified that they believed, based on their experience and training, that Mr. Petersen was overdosing on an opioid. An opioid

is a "controlled substance" and therefore a "drug of abuse" for purposes of R.C. 4511.19(A)(1)(a). R.C. 3719.011(A); R.C. 3719.01(I); R.C. 3719.41; OAC 4729:9-1-01. Mr. Petersen did not object to the admission of this testimony or challenge its admission on appeal. He does not seem to challenge Mr. Koneval's qualifications to render an opinion as to his drug use. He does not dispute that opiates are drugs of abuse. Furthermore, in *Collins* there was no administration of NARCAN. Here, Mr. Petersen received NARCAN, which restored his breathing to normal. Mr. Koneval testified that NARCAN does not work on someone who is not overdosing on an opioid. Mr. Koneval also distinguished an opioid overdose from a seizure, which Mr. Petersen alleged he was experiencing, in that a seizure would not cause pinpoint pupils or unresponsiveness. Once again, Mr. Petersen did not object to that testimony.

{¶26} The evidence here further showed that Mr. Petersen refused chemical tests at the hospital even though he told Trooper Eaton he was not under the influence of drugs at the time of the crash. A urine or breath test would have dispelled any doubt as to whether he had taken drugs, and his refusal was probative as to his consciousness of guilt. *Maumee,* 69 Ohio St.3d at 343.

{¶27} In sum, the State presented evidence that Mr. Petersen's "consumption of [a drug of abuse] so affected [his] nervous system, brain, or muscles . . . so as to impair to an appreciable degree, [his] ability to operate [his] vehicle[.] . . ." *Moine*, 72 Ohio App.3d at 586.

{¶28} Accordingly, based on the foregoing, we conclude that from the evidence, when viewed in the light most favorable to the State, a rational trier of fact could have found the essential elements of OVI proven beyond a reasonable doubt. Mr. Petersen's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

**[MR. PETERSEN'S] CONVICTION AS TO OPERATING A VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL AND/OR DRUGS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶29} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.). This Court "'will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version.'" *State v. Tolliver*, 2017-Ohio-4214, ¶ 15 (9th Dist.), quoting *State v. Barger*, 2016-Ohio-443, ¶ 29 (9th Dist.)

{¶30} Here, Mr. Petersen argues that the jury lost its way during the trial and "substituted [Trooper Eaton's] opinion and speculation for factual evidence in finding [him] guilty[,]" and therefore, his conviction is against the manifest weight of the evidence. Mr. Petersen's argument overlooks the fact that Trooper Eaton's opinion was corroborated by the opinion of the EMT, Mr. Koneval, and Mr. Petersen did not challenge Mr. Koneval's qualifications or testimony.

{¶31} The jury heard the testimony and evidence presented by the State. The jury listened to the testimony of J.M., Trooper Eaton, and Mr. Koneval, and watched the body camera video footage. The jury was free to believe the State's evidence that Mr. Petersen was under the influence at the time he was operating his vehicle.

**{¶32}** Upon our thorough review of the entire record, we cannot conclude that the jury, in resolving any conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice requiring a reversal of Mr. Petersen's OVI conviction. *See Otten*, 33 Ohio App.3d at 340. The jury, as the trier of fact, was in the best position to evaluate the credibility of the testimony and evidence and was free to believe the State's evidence. *State v. Shank*, 2013-Ohio-5368, ¶ 29 (9th Dist.). The State presented witnesses and video evidence from which the jury could have reasonably concluded that Mr. Petersen was guilty of OVI. Mr. Petersen has not shown that this is an exceptional case where the evidence weighs heavily against his conviction. Mr. Petersen's second assignment of error is overruled.

### III.

**{¶33}** Based on the foregoing, Mr. Petersen's assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

SUTTON, J.
CONCURS.

FLAGG LANZINGER, P. J.
DISSENTING.

{¶34} I respectfully dissent because I would hold that the State failed to present sufficient evidence to support Petersen's OVI conviction. Consistent with this Court's precedent addressing analogous facts, I would hold that the State failed to establish a nexus between Petersen's allegedly impaired condition and a drug of abuse. *State v. Collins*, 2012-Ohio-2236, ¶ 4-20 (9th Dist.).

{¶35} As this Court stated in *Collins*, "[w]hile R.C. 4511.19(A)(1)(a) does not require the State to prove specific blood concentration levels, it does require the State to do more than prove impairment in a vacuum." *Id.* at ¶ 19. "R.C. 4511.19(A)(1)(a) specifically requires that the State demonstrate that the source of the defendant's impairment was 'alcohol, a drug of abuse, or a combination of them.'" *Id.*, quoting R.C. 4511.19(A)(1)(a). Because there was no evidence indicating that Petersen was under the influence of alcohol, "it was necessary for the State to demonstrate that [Petersen] was under the influence of a 'drug of abuse' as defined by the Revised Code." *Id.*

**{¶36}** As the majority acknowledges, Petersen's conviction was based upon the state trooper and EMT's opinions that Petersen was under the influence of an opioid. Importantly, the police did not locate drugs or drug paraphernalia in Petersen's vehicle, nor did the police obtain a chemical test. Additionally, Petersen never admitted to ingesting a drug of abuse. *Compare State v. Strebler*, 2006-Ohio-5711, ¶ 12, 14 (9th Dist.).

**{¶37}** Even assuming the state trooper and EMT were qualified to render opinions that Petersen was under the influence of an opioid, their testimony was insufficient to sustain a conviction for an OVI related to a drug of abuse. *See, e.g.*, *Collins*, 2012-Ohio-2236, at ¶ 4-20 (9th Dist.) (sustaining the defendant's challenge to the sufficiency of the evidence and holding that– despite the officer's observations–the State failed to establish that the defendant's impaired condition was the result of being under the influence of a drug of abuse); *State v. Samples*, 2023-Ohio-1186, ¶ 4-17 (9th Dist.) (same); *see State v. Love*, 2022-Ohio-1454, ¶ 12-27 (7th Dist.); *Cleveland v. Turner*, 2013-Ohio-3145, ¶ 7-16 (8th Dist.); *State v. Husted*, 2014-Ohio-4978, ¶ 1, 14-23 (4th Dist.) (addressing R.C. 4511.194(B)(1) but applying law related to R.C. 4511.19(A)(1)(a)). Simply put, their testimony did not establish a nexus between Petersen's impaired condition and a drug of abuse. *Collins* at ¶ 20. Based upon the precedent of this Court and others, I would sustain Petersen's first assignment of error and would overrule his second assignment of error on the basis that it is moot. Accordingly, I respectfully dissent.

APPEARANCES:

ERIC D. HALL, Attorney at Law, for Appellant.

GREGORY HUBER, J. MATTHEW LANIER, and MEGAN A. PHILBIN, Prosecuting Attorneys, for Appellee.