[Cite as *State v. Boothe*, 2026-Ohio-2010.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

STATE OF OHIO

    Appellee

v.

TIFFANY N. BOOTHE

    Appellant

C.A. No.    2025CA0017-M

APPEAL FROM JUDGMENT
ENTERED IN THE
WADSWORTH MUNICIPAL COURT
COUNTY OF MEDINA, OHIO
CASE No.    TRC2401740

DECISION AND JOURNAL ENTRY

Dated: May 29, 2026

STEVENSON, Judge.

{¶1}    Defendant-Appellant Tiffany Boothe appeals the judgment of the Wadsworth Municipal Court that found her guilty of operating a vehicle under the influence of drugs ("OVI"), alleging that her conviction was against the sufficiency and manifest weight of the evidence. This Court affirms.

I.

{¶2}    Ms. Boothe was charged with one count of OVI under R.C. 4511.19(A)(1)(a) and one count of driving under suspension in violation of R.C. 4510.11(A), both misdemeanors of the first degree. She pleaded no contest to driving under suspension and the OVI charge proceeded to a jury trial.

{¶3}    A Dollar Tree assistant store manager testified that she was working on May 12, 2024, when she called 911 due to a customer who was allegedly causing a disturbance in the store. She identified Ms. Boothe as the woman causing the disturbance. The manager testified that Ms.

Boothe was "being outrageous, calling names[,] . . . [and] threatening another customer[.]" According to the manager, Ms. Boothe's speech "was slurry" and she appeared to be under the influence of alcohol or drugs. The manager testified that Ms. Boothe's vehicle almost hit another customer when she drove away from the store. The manager's 911 call was played at trial and admitted into evidence.

{¶4}   A Dollar Tree customer testified that, when she pulled into the store parking lot on May 12, 2024, she noticed that a vehicle was "not in a parking space" and that it had "pulled up into the middle of the aisle." The vehicle belonged to Ms. Boothe. The customer approached Ms. Boothe in the store and confronted her about a child that was inside the vehicle. The customer testified that Ms. Boothe exited the store after the women exchanged words and that Ms. Boothe "swerved over and tried to hit me" as she was leaving the parking lot.

{¶5}   City of Wadsworth Police Officer Chris Hardy was working on May 12, 2024, when he heard the dispatch call regarding the disturbance at Dollar Tree. The dispatch call included a vehicle description and license plate number of the vehicle that had left the store. Officer Hardy ran the license plate number and the vehicle came back belonging to Ms. Boothe, who had a suspended driver's license. The officer was aware of Ms. Boothe from past dealings and he knew what she looked like. The officer testified that he saw Ms. Boothe driving and that he initiated a stop of her vehicle.

{¶6}   Officer Hardy testified that Ms. Boothe exited her vehicle at or around the same time that he exited his cruiser. According to Officer Hardy, this was unusual as "[m]ost people stay inside their vehicles on a traffic stop." He testified that Ms. Boothe "stumbled a little bit" and that "[s]he was definitely unsteady on her feet" as she exited her vehicle.

{¶7}    Officer Hardy approached and started talking to Ms. Boothe, who was "stumbling over her words" and "talking very fast[.]" He testified that Ms. Boothe's "eyelids [were] heavy[;]" "[h]er eyes were red, watery, and bloodshot[;]" and she had a "distort[ed]" perception of time.

{¶8}    Based on his observations, Officer Hardy decided to administer two divided attention tests known as the alphabet and number tests. He first asked Ms. Boothe to recite the alphabet, starting at D and stopping at Q. Officer Hardy testified that Ms. Boothe's performance on this test was "poor" and that she "continually performed poorly" despite being given another chance to complete the test. He next asked Ms. Boothe to complete a number test, counting back from 69 to 53. Officer Hardy testified that Ms. Boothe "hesitated a few times counting backwards" and that "she took a little bit longer time to really think about what the next number was."

{¶9}    Ms. Boothe told Officer Hardy that she had not consumed any alcohol and the officer testified that he "didn't smell any alcohol on her breath." Ms. Boothe told him, however, that she had taken Xanax and Adderall. Officer Hardy testified that he had received drug training at the police academy and through "ARIDE" which "stands for Advanced Roadside Impaired Driving Enforcement." He learned about central nervous system ("CNS") depressants and stimulants in this training. He testified that, through his training, he learned that Xanax is a CNS depressant and that the effects of a CNS depressant include "red, bloodshot, glassy eyes" as well as "slurred speech" and "distorted time[.]" Officer Hardy further testified that he had learned Adderall is a CNS stimulant and that the effects of a CNS stimulant include "nervousness, shakiness" and appearing "fidgety . . . [and] anxious."

{¶10}   Officer Hardy administered standardized field sobriety tests after observing Ms. Boothe's actions, behavior, her performance on the alphabet and number tests, and learning she had taken Xanax and Adderall. The first test he administered was the horizontal gaze nystagmus

("HGN") test. Nystagmus is "the involuntary bouncing of the eyes" and Officer Hardy testified that nystagmus is "indicative of impairment, especially for CNS depressants."

{¶11} Officer Hardy testified that the HGN test consists of three parts: lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and nystagmus prior to 45 degrees. Because the eyes are checked twice in each part of this test, there can be a total of six clues of impairment exhibited in the HGN test. Officer Hardy testified that he observed four out of the six clues of impairment when he conducted this test on Ms. Boothe. He testified that "the more clues you get typically indicates a higher level of impairment in that person."

{¶12} Officer Hardy next administered the walk and turn test. Although Ms. Boothe had told him that she had an ankle injury, Officer Hardy testified that he "didn't notice anything that I felt would prohibit her from being able to safely do the test." He testified that there can be a total of eight clues of impairment exhibited in the walk and turn test and that he observed eight clues when he administered this test to Ms. Boothe. He testified that "[i]t was very hard for [Ms. Boothe] to stay concentrated on my instructions" and that, "especially with these CNS depressants, lack of focus, getting sidetracked, things of that nature are going to be very common indications of impairment." Officer Hardy further testified there were "multiple times that [Ms. Boothe] either stepped [] out of the position or lost her balance[;]" that she failed to maintain the starting position while he was giving the demonstration and that she started too soon; that Ms. Boothe stopped in the middle of the test; that there were several times when Ms. Boothe did not touch heel to toe as instructed; and that Ms. Boothe stepped off the line. Officer Hardy testified that an officer only needs four clues of impairment in the walk and turn test to have probable cause and that "getting all eight clues is a very good indication of a high level of impairment."

{¶13} The last test Officer Hardy administered was the one leg stand test. He testified that Ms. Boothe chose which foot to stand on during this test and that, therefore, an ankle injury "should not have affected her ability in that test." He testified that Ms. Boothe had difficulty paying attention during this test and that she exhibited three of the four clues of impairment during this test. The clues of impairment that Ms. Boothe exhibited included swaying while balancing, using her arm for balance, and putting her foot down during the test.

{¶14} Officer Hardy testified to his dash cam video recording and body worn camera video that were played at trial and admitted into evidence. He also testified to a dash cam video recording from Ms. Boothe's vehicle. The dash cam video recording from Ms. Boothe's vehicle was played at trial and admitted into evidence. Officer Hardy testified that he observed "multiple traffic violations, marked lane violations; weaving within lane, [and] following too closely" in the dash cam video recording from Ms. Boothe's vehicle.

{¶15} Ms. Boothe testified in her defense at trial. She testified that she was experiencing problems associated with a prior mini stroke that included having difficulty with reasoning and control. Ms. Boothe testified that she has had multiple surgeries on her left ankle and that the surgeries affect her coordination and balance. She also testified that her speech is affected by dentures she wears and that she takes multiple prescription medications, including Xanax and Adderall, to treat mental health disorders.

{¶16} Ms. Boothe recorded on her cellphone some of her interactions at the Dollar Tree on the day of the incident. Her cellphone recording was admitted into evidence at trial.

{¶17} The jury found Ms. Boothe guilty of OVI. The court sentenced Ms. Boothe to 180 days in the Medina County Jail, with 120 days suspended for the OVI, and 30 days in jail on the driving under suspension charge to which she had pleaded no contest, with time to run concurrent

to the OVI sentence. The court sentenced Ms. Boothe to three years of probation, imposed a three-year driver's license suspension, and imposed fines. Ms. Boothe appeals, asserting two assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR NO. I**

**THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY'S VERDICT OF GUILTY AS TO OPERATING A VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL AND/OR DRUGS OF ABUSE.**

**{¶18}** Ms. Boothe argues in her first assignment of error that the evidence was insufficient to support a guilty OVI verdict. We disagree.

**{¶19}** "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390. "For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State." *State v. Zappa,* 2022-Ohio-243, ¶ 7 (9th Dist.), citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This Court does not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). Evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

**{¶20}** Ms. Boothe does not dispute that she had taken Xanax and Adderall on the day of the incident and that these are drugs of abuse under R.C. 4511.19(A)(1)(a). She argues that there was insufficient evidence to support an OVI verdict considering Officer Hardy did not witness any signs of impaired driving before pulling her over. Ms. Boothe also contends that the officer did

not have formal medical training to support his opinion that she was under the influence and that her physical and mental health problems affected her ability to perform the standardized field sobriety tests. She maintains that "[n]o conclusive evidence was presented that [she] was operating a vehicle under the influence of any substances." The State contends that sufficient evidence was introduced to sustain the OVI conviction.

{¶21} Ms. Boothe was found guilty of OVI in violation of R.C. 4511.19(A)(1)(a), which provides:

> (A)(1) No person shall operate any vehicle . . . if, at the time of the operation, any of the following apply:

> (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.

{¶22} The standard for determining whether someone is "under the influence" is the same for both alcohol and a drug of abuse. *State v. Peters*, 2008-Ohio-6940, ¶ 6 (9th Dist.). "The defendant's ability to perceive, make judgments, coordinate movements, and safely operate a vehicle is at issue in the prosecution of a defendant under [R.C. 4511.19(A)(1)]." *Newark v. Lucas*, 40 Ohio St.3d 100, 104 (1988).

{¶23} "'To prove impaired driving ability, the state can rely on physiological factors . . . to demonstrate that a person's physical and mental ability to drive was impaired.'" *State v. Slone*, 2005-Ohio-3325, ¶ 9 (9th Dist.), quoting *State v. Holland*, 1999 WL 1313665, *5 (11th Dist. Dec. 17, 1999). The State is required "to do more than prove impairment in a vacuum." *State v. Collins*, 2012-Ohio-2236, ¶ 19 (9th Dist.). The State must "establish that [the defendant's] impaired condition resulted from being under the influence of a drug of abuse." *Id.* at ¶ 20.

{¶24} The testimony in this case is sufficient to establish a nexus between Ms. Boothe's impairment-related symptoms and the use of specific drugs of abuse – Xanax and Adderall. *See*

*State v. Zentner*, 2003-Ohio-2352, ¶ 19 (9th Dist.); *Slone* at ¶ 9 (9th Dist.). Ms. Boothe does not dispute that she had taken Xanax and Adderall on the morning of the incident. In fact, she told Officer Hardy that she had taken these drugs. Officer Hardy testified that he learned about these drugs at the police academy and through ARIDE and he is aware of the effects of both drugs. He testified that Ms. Boothe "stumbled" and "was definitely unsteady on her feet[;]" her "eyelids [were] heavy[;]" "[h]er eyes were red, watery, and bloodshot[;]" and she had a "distort[ed]" perception of time, which are all effects of a CNS depressant such as Xanax. She also had difficulty focusing and staying on task during the field sobriety tests which he testified are also an effect of CNS depressants. Officer Hardy further testified that Ms. Boothe was "talking very fast" which is an effect of a CNS stimulant such as Adderall.

{¶25} Officer Hardy testified that Ms. Boothe "performed poorly" on the alphabet test and that he observed numerous clues of impairment on the standardized field sobriety tests. Specifically, Officer Hardy observed four out of six clues of impairment on the HGN test; eight out of eight clues of impairment on the walk and turn test; and three out of four clues of impairment on the one leg stand test. He testified that he did not notice anything that would prohibit or affect Ms. Boothe's ability to take these tests. Officer Hardy's testimony is sufficient to establish that Ms. Boothe was impaired by her use of Xanax and Adderall.

{¶26} Further, Officer Hardy did not have to observe signs of impaired driving to initiate the stop. Like Ms. Boothe, the appellant in *State v. Wilson,* 2014-Ohio-3182 (9th Dist.) argued that her conviction was "based on insufficient evidence because there was no evidence that her 'actual driving was impaired in any way.'" *Id*. at ¶ 14.. She emphasized on appeal that the officer "initiated a traffic stop strictly because of her suspended driver's license, not because he ever saw her commit any traffic violations or drive erratically." *Id.* This Court overruled Ms. Wilson's argument,

concluding that sufficient evidence supported the conviction and that the State did "'not have to prove actual impaired driving; rather, it need only show an impaired driving ability.'" *Id.* at ¶ 15, quoting *Zentner*, 2003-Ohio-2352, at ¶ 19 (9th Dist.). The State, as discussed above, could rely on physiological factors to establish that the defendant's ability to drive was impaired. *Id. Accord State v. Kurjian*, 2006-Ohio-6669, ¶ 17 (9th Dist.) ("[T]here is no prerequisite that an officer observe erratic driving in order to effectuate an arrest for driving under the influence."). In this case, there is sufficient evidence to establish Ms. Boothe had impaired driving ability based on Officer Hardy's testimony. Lastly, the jury watched the dash cam video of Ms. Boothe's car and the video from the Dollar General which showed examples of Ms. Boothe's impaired driving.

{¶27} Viewing the evidence in a light most favorable to the State, this Court concludes that there is sufficient evidence upon which a jury could reasonably conclude that all elements of OVI in violation of R.C. 4511.19(A)(1)(a) were established beyond a reasonable doubt. Assignment of error number one is overruled.

## ASSIGNMENT OF ERROR NO. II

**APPELLANT'S CONVICTION AS TO OPERATING A VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL AND/OR DRUGS OF ABUSE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶28} Ms. Boothe argues in her second assignment of error that her conviction is against the manifest weight of the evidence. For the reasons set forth below, this assignment of error is overruled.

{¶29} "When considering whether a conviction is against the manifest weight of the evidence, this Court applies a different standard than in a sufficiency analysis." *Zappa*, 2022-Ohio-243, at ¶ 17 (9th Dist.). To evaluate the weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the

evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶30} Other than citing different cases to establish the manifest weight standard of review, Ms. Boothe's challenge to the manifest weight of the evidence is a verbatim recitation of her challenge to the sufficiency of the evidence and we likewise reject it. *See State v. Tucker*, 2015-Ohio-3810, ¶ 12 (9th Dist.) (this court rejected a manifest weight argument that was same as sufficiency argument); *State v. Stewart*, 2012-Ohio-3671, ¶ 26 (9th Dist.) (rejecting manifest weight argument where the defendant "[did] not present any separate argument in support of his manifest weight analysis"); *State v. Henry*, 2016-Ohio-680, ¶ 17 (9th Dist.) (manifest weight argument rejected where it "rests on the same basis as [the appellant's] sufficiency challenge."). The testimony and evidence summarized under the first assignment of error similarly show that Ms. Boothe's conviction is not against the manifest weight of the evidence. Having reviewed the record, this Court concludes that this is not an exceptional case in which the evidence weighs heavily against Ms. Boothe's conviction. *Otten*, 33 Ohio App.3d at 340. Ms. Boothe's manifest weight of the evidence argument, as asserted in her second assignment of error, is overruled.

III.

{¶31} For the reasons stated above, Ms. Boothe's assignments of error are overruled. The judgment of the Wadsworth Municipal Court is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, P. J.
SUTTON, J.
CONCUR.


APPEARANCES:

ERIC D. HALL, Attorney at Law, for Appellant.

JARED C. ROBERTS, Assistant Law Director, for Appellee.